**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Terry Len HARRIS,
Defendant-Appellant.**

No. 15084.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 22, 1988.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Feb. 9, 1988.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Elizabeth A. Bock, Asst. Public Defender, Springfield, for defendant-appellant.

HOGAN, Judge.

In this court-tried case, defendant Terry Len Harris was found guilty of first-degree burglary as defined and denounced by § 569.160, RSMo 1986, and his punishment was assessed at imprisonment for a term of six (6) years. He appeals. We affirm.

In this court, the defendant has briefed four assignments of error. Points Two and Four deal with the sufficiency of the evidence to support the judgment of conviction. The defendant was charged with burglary with the intent to steal. Defendant's Point Two is that his intent to steal was not established. His Point Four is that he was so intoxicated that he could not form or entertain an intent to steal. Points One and Three assign error to the reception of evidence.

Rule 27.01(b) provides that the findings of the court in a jury-waived criminal case shall have the force and effect of the verdict of a jury. Therefore, in determining the sufficiency of the evidence to support the finding of the trial court, this court accepts as true all evidence in the record tending to prove the defendant's guilt together with all inferences reasonably to be drawn therefrom, disregarding all evidence and inferences to the contrary. *State v. Giffin*, 640 S.W.2d 128, 130[1, 2] (Mo. 1982); *State v. R___ D___ G___*, 733 S.W.2d 824, 826 (Mo.App. 1987).

Since 1968, Rule 27.01(b) has required only that the trial court make a general finding unless requested findings of fact and declarations of law are submitted to the court. *State v. Boone*, 490 S.W.2d 318, 322 (Mo.App. 1973). No findings of fact or declarations of law were submitted to the trial court in this case, but the trial court dictated its findings into the record, and they have been very helpful. Slightly paraphrased (and numbered) the trial court's findings are:

1. "... I do find that you did enter the premises of Paula Jean Wright at 1855 East Dale, Springfield, Missouri on July 15 of 1986, and that that was in the County of Greene and State of Missouri. That [1855 East Dale] was an inhabitable structure and that Paula Wright was present in that structure at that time, and she was not a participant in the crime.

2. So the other question ... has to do with your defense of alcoholism, which goes specifically to the elements of the crime, that you knowingly entered [the premises] unlawfully for the purpose of committing stealing in the house.

   Now, I do find those facts I just set forth beyond a reasonable doubt, but I also believe these [further facts] to be true beyond a reasonable doubt: First of all, I find that at the time you were not so intoxicated that you didn't know what you were doing and that you could not form an intent. In fact, I believe that you did form an intent ...

3. First of all, you deliberately parked your car on a dead end street, with the keys in it. You went through the vacant lot and across the fence to the house.

   ....

4. I believe that you took your boots off and put them under a bush, where they're shown in the photograph. I believe that you put your boots there deliberately and neatly placed them there where they were out of the way, so you could retrieve them. I believe that you did attempt to enter the house initially at the windows to the garage, which should have been obvious and was obvious to you that that would be the place to make the least noise and would be the least apt to awake the occupants when you entered the house.

5. I believe that you took your belt off before you entered the house, thinking that it might make noise as you climbed through a window. I believe that you cut the screen at the front window of the house and entered the house at the front window, across the davenport—or the—that's an old name —across the sofa there. The sofa did have grass on it, which came because you came across the vacant lot and across the back yard.

6. I believe that you did enter the bedroom of the lady who was present in the household at that time, Paula Wright, and that you did so quietly. I believe that you entered the house quietly through the window and you entered the bedroom. I believe that you did touch the cup and the other items that were on the sewing machine next to the bed.

7. I believe that when Miss Wright woke up, that you attempted to avoid detection by keeping quiet deliberately, and that only when she began to call for her roommate and you realized there might be someone else in the house, did you leave the premises.

8. Now, when you left the premises, I believe you left by the front door, rather than by the window where you entered, which meant that you necessarily had to unlock the front door. I believe that you went around to the back of the house and headed on a direct route toward your parked car, so that I believe that you knew where to locate your car.

9. I believe that the police officers did arrive within two minutes after they were called. In the meantime, you had crossed the fence and that you layed [sic] on the ground. One officer, I believe, said you were on your face, the other officer, I believe, said you were on your back. But the officer [who] said you were on your back arrived second and after you had been aroused by the first officer. So I believe that you were [lying] on your face. I believe that you were not directly across the fence where you crossed, which means that you went slightly to your left on your route of travel to get out of the area, so I believe that you were trying to conceal yourself.

10. I believe that while you were in the house you went to the usual location in

the house where a purse might be kept, near a bed at night, and therefore I do believe that you knowingly entered unlawfully for the purpose of committing stealing."

First-degree burglary may be committed by several different means, see MACH–CR 23.50, but in the case at hand, it was necessary for the State to prove beyond a reasonable doubt that the defendant: 1) knowingly entered unlawfully or knowingly remained unlawfully 2) in a building or inhabitable structure 3) for the purpose of committing a crime therein, and 4) while the defendant was inside or entering the structure or while he was fleeing from it, someone not a participant in the burglary was present in the structure. The New Missouri Criminal Code: A Manual for Court Related Personnel § 14.20, pp. 14–18, 14–19 (1978).

In paragraph numbered one (1) of the trial court's findings, the court found that the defendant entered an inhabitable structure located at 1855 East Dale, Springfield, Missouri. Further in paragraph one (1), the trial court found that Paula Wright was present in the structure (a house) at the time the defendant entered, and that she was not a participant in the crime. By the findings which we have numbered two (2) through ten (10), the trial court found that the defendant knowingly entered the premises unlawfully for the purpose of committing the crime of stealing. The defendant points to no specific fact or circumstance which would prevent the trial court from finding the facts as it found them to be, or from drawing the inferences it drew. The defendant does not contend that the trial court misstated the operative facts. As noted, he does contend, for two reasons, the State did not prove he had any intent to steal.

The defendant first cites the familiar rule that if the State relies on circumstantial evidence to prove a defendant's guilt, the facts and circumstances relied upon must be consistent with each other and with the hypothesis of defendant's guilt. *State v. Williams,* 652 S.W.2d 226, 227 (Mo.App. 1983). The rule cited is a

venerable and indubitably correct principle, but it does not aid the defendant in this case. It was established by the testimony of Paula Wright, an occupant of the premises entered, that the burglary was committed during the early morning hours of July 15, 1986. Miss Wright testified that she and Glenda Harris, the other occupant of the house, had a color television set, an audio system, jewelry and money in the dwelling which was entered. There was evidence that the defendant entered the premises surreptitiously. Unlike the defendant in *State v. Williams,* 652 S.W.2d 226, this defendant had neither a right nor a lawful reason to be on the premises. When burglary with intent to steal is charged, it is not necessary that an act of stealing be completed after the habitable building (or other structure) has been unlawfully entered. In this State it is clear that unlawful entry into a building containing items of value is sufficient to demonstrate an intent to steal. *State v. Moore,* 729 S.W.2d 239, 240 (Mo.App. 1987); *State v. McBurnett,* 694 S.W.2d 769, 773 (Mo. App. 1985); *State v. Cameron,* 604 S.W.2d 653, 661–662 (Mo.App.1980). The trial court's finding that the defendant entered the house at 1855 East Dale for the purpose of stealing is amply supported by the evidence.

The defendant further argues, however, that when the burglary was committed, he was so intoxicated as to be incapable of forming or entertaining a specific criminal intent. In particular, defendant argues that he "was so intoxicated that he did not possess the culpable state of mind required to sustain a conviction of burglary in the first degree. Since no one forced the alcohol down the [defendant's] throat, [the] facts and circumstances place the [defendant] in the position of claiming voluntary intoxication as a defense." Counsel goes on to argue that alcohol abuse or "alcoholism" is a disease, and by inference, that voluntary intoxication should be recognized as a defense.

This court recently addressed a similar argument in *State v. Tate,* 733 S.W.2d 45 (Mo.App. 1987). Section 562.076.1, RSMo

1986, became effective in its present form on October 1, 1984, and reads:

"A person who is in an intoxicated or drugged condition whether from alcohol, drugs or other substance, is criminally responsible for conduct unless such condition is *involuntarily* produced and deprived him of the capacity to know or appreciate the nature, quality or wrongfulness of his conduct." (our emphasis).

 An earlier version of § 562.076.1, Laws of Mo. 1977 p. 679, now repealed, provided that voluntary intoxication, in some circumstances, affected criminal liability and further provided that involuntary intoxication, under certain conditions, constituted a complete defense. In *Tate*, 733 S.W.2d at 47, this court held that by reason of the 1983 amendment of § 562.076.1, voluntary intoxication is no longer a factor in gauging the criminality of conduct, including the issue of specific intent. Further, the fact that the defendant's ingestion of alcohol is compulsive does not furnish a basis for an involuntary intoxication defense. *State v. Burroughs*, 729 S.W.2d 571, 575[4] (Mo.App. 1987). The point is without merit.

The defendant's two remaining points need not detain us long. As noted, one of the occupants of the house at 1855 East Dale testified that she and the other occupant of the premises had a color television set, an audio system, jewelry and money in the house. The defendant now argues that this evidence was irrelevant. He is mistaken. Such testimony tended to establish that valuable property was kept in the house and the intent with which the burglary was committed. *State v. Ruffin*, 286 S.W.2d 743, 749[14] (Mo. 1956).

The defendant also argues that the court erroneously received State's Exhibit 17, a photograph, in evidence. State's Exhibit 17 has not been filed in this court. There is, therefore, nothing to review with respect to the contention that State's Exhibit 17 should not have been received in evidence. *State v. Richter*, 647 S.W.2d 513, 520[9] (Mo.banc 1983). We find no error in any

respect briefed in this court; accordingly, the judgment is in all respects affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.