**STATE of Missouri, Respondent,**

v.

**Larry Dean POINTER, Appellant.**

**No. WD 51708.**

Missouri Court of Appeals,
Western District.

Oct. 29, 1996.

Ellen M. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Breck K. Burgess, Assistant Attorney General, Jefferson City, for respondent.

Before ULRICH, C.J., P.J., and FENNER and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Larry Dean Pointer appeals from his conviction by a jury of one count of murder in the first degree in violation of § 565.020, RSMo 1994.[1] Mr. Pointer contends that the trial court erred by instructing the jury that his intoxication would not relieve him of responsibility for his conduct. Mr. Pointer claims that the instruction, and the statute upon which it is based, created a presumption that he had the requisite mental state for first degree murder and prohibited the jury from considering his defense that his intoxicated condition negated the necessary mental state, in violation of his due process rights and his right to present a defense.

The judgment of the trial court is affirmed.

On November 15, 1990, police found Mr. Pointer unconscious in the front seat of a car parked near the Missouri River outside Lexington, Missouri. About five feet from the car, police also found the body of Marcie Baker, who had been shot to death. The officers awakened Mr. Pointer, who appeared intoxicated, and he admitted killing Ms. Baker.

Mr. Pointer was charged with murder in the first degree for Ms. Baker's death. At trial, a clinical psychologist testified on his behalf that Mr. Pointer had brain damage and, as a result, Mr. Pointer would have had an extreme reaction to alcohol. The psychologist further testified that due to Mr. Pointer's consumption of three beers and a 750 milliliter bottle of Cisco, a twenty percent alcohol-fortified wine drink, he could not deliberate and was not capable of knowing that his conduct was practically certain to cause a particular result. The defense also presented the testimony of a psychiatrist who stated that Mr. Pointer might have experienced an alcoholic blackout, given the amount of liquor he had consumed.

In instructing the jury, the trial court submitted a verdict director for the offense of murder in the first degree. To find Mr. Pointer guilty of this offense, the jury had to find that Mr. Pointer, either alone or together with Mike Howell,[2] caused the death of Marcie Baker by shooting her while knowing that this conduct was practically certain to cause her death. In addition, the jury had to find that Mr. Pointer "did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief." The trial court also submitted Instruction No. 12, which followed the format of MAI–CR3d 310.50. That instruction stated:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

After deliberation, the jury found Mr. Pointer guilty of first-degree murder, and he was sentenced to a term of life imprisonment without the possibility of probation or parole.

In his sole point on appeal, Mr. Pointer claims that the trial court erred by submitting Instruction No. 12, based upon MAI–CR3d 310.50, because it prohibited the jury from considering that he was too intoxicated to form the requisite mental state. He argues that this instruction and § 562.076,[3] the

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

2. Mike Howell was a friend of Mr. Pointer who was with Mr. Pointer and Ms. Baker at the time Ms. Baker was killed. Mr. Howell testified that Mr. Pointer shot Ms. Baker because she refused to have sex with the two men.

3. Section 562.076 reads, in pertinent part:
   1. A person who is in an intoxicated or drugged condition ... is criminally responsible for conduct unless such condition is involuntarily produced and deprived him of the capac-

ity to know or appreciate the nature, quality, or wrongfulness of his conduct.

3. Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated or drugged condition has been received into evidence.

statute which was the basis for Instruction No. 12, violated his due process rights by creating a presumption that an intoxicated person has the requisite mental state, thereby lowering the state's burden of proof on that issue. Mr. Pointer also complains that the instruction and the statute violated his right to present a defense by preventing the jury from considering his contention that an alcoholic blackout negated the mental state necessary for first-degree murder.

Mr. Pointer does not dispute that Instruction No. 12 complies with the applicable pattern instruction, MAI–CR3d 310.50. Where a given instruction accurately follows the applicable pattern instruction, the immediate appellate court has no power to declare it erroneous. *State v. Urban*, 798 S.W.2d 507, 513 (Mo.App.1990). This court lacks the authority to find instructions and their accompanying notes on use to be erroneous where they have been adopted for standard use by the Missouri Supreme Court. *Id.*

Mr. Pointer argues that this case should be transferred to the Missouri Supreme Court to resolve his constitutional challenges. In light of recent case decisions, Mr. Pointer's constitutional claims are merely colorable, rather than real and substantial. *State v. Roedel*, 884 S.W.2d 106, 108 (Mo. App.1994). This court has jurisdiction, and a transfer is unnecessary. *Id.*

Mr. Pointer first claims that Instruction No. 12 relieved the State's burden of proving the requisite mental state for first degree murder. He successfully relied on a nearly identical claim in an appeal from his original conviction for murdering Ms. Baker. *State v. Pointer*, 887 S.W.2d 652, 653 (Mo.App. 1994). This court reversed his conviction based on *State v. Erwin*, 848 S.W.2d 476 (Mo. banc), *cert. denied*, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), where the Missouri Supreme Court rejected a prior version of MAI–CR3d 310.50. *Pointer*, 887 S.W.2d at 653. That version stated, "You are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct." *Erwin*, 848 S.W.2d at 481. The *Erwin* court held that this instruction violated due process under *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because it implicitly relieved the state of its burden of proof as to the requisite mental state. *Erwin*, 848 S.W.2d at 483–84. In so holding, the court explained:

> MAI–CR3d 310.50 does not purport to be connected to any other instruction. It stands by itself as a comment on the evidence of intoxication. A jury is at least as likely to assume the instruction relieves the state of its burden of proving the defendant's mental state as a jury is to simply disregard the evidence of intoxication.

*Id.* at 483 (footnote omitted).

After *Erwin*, MAI–CR3d 310.50 was revised to its current version by adding a first sentence which states that, "The state must prove every element of the crime beyond a reasonable doubt." Mr. Pointer argues, however, that this revision did not cure the constitutional infirmity of the instruction. An identical argument has been rejected by the Southern District in *State v. Armstrong*, 930 S.W.2d 449, 452 (Mo.App.S.D.1996), and the Eastern District in *State v. Bell*, 906 S.W.2d 737, 740 (Mo.App.1995). Both opinions stressed that the current version of MAI–CR3d 310.50 does not stand by itself, but "explicitly directs the jury's attention to the state's burden to prove *every* element of the crime." *Armstrong*, 930 S.W.2d at 452; *Bell*, 906 S.W.2d at 740.

Recently, the Supreme Court of the United States reached the same conclusion. In *Montana v. Egelhoff*, —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996), the jury was instructed that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state which is an element of the offense." The instruction included statutory language from Mont.Code Ann. § 45–2–203 (1995), and the Montana Supreme Court concluded that the statute denied the defendant due process because it relieved the State of part of its burden of proof. —— U.S. at ——, 116 S.Ct. at 2016. The Montana Supreme Court reasoned that, by excluding evidence of intoxication which might refute the necessary mental state, the statute made it easier for the State to prove the requisite *mens rea*, thus

reducing its burden of proof. —— U.S. at ——, 116 S.Ct. at 2023.

In reversing the decision of the Montana Supreme Court, the United States Supreme Court held that the inclusion of language that "[t]he State of Montana has the burden of proving the guilt of the Defendant beyond a reasonable doubt," was sufficient to protect the instruction from *Sandstrom*'s prohibition against relieving the state from proving the defendant's mental state beyond a reasonable doubt. —— U.S. at —— – ——, 116 S.Ct. at 2022–23. Likewise, the language added to MAI–CR3d 310.50, that "[t]he state must prove every element of the crime beyond a reasonable doubt," has the same curative effect.

Mr. Pointer further complains that the instruction and the statute violated his due process right to present a defense by preventing the jury from considering his contention that an alcoholic blackout negated the mental state necessary for first-degree murder. An identical claim was rejected by the Southern District in *Armstrong*, which, citing *Egelhoff*, found the claim to be merely colorable rather than real and substantial. *Armstrong*, at 452.

In *Egelhoff*, the Montana Supreme Court had held that the defendant had a due process right to present and have the jury consider all relevant evidence to rebut the State's evidence on all elements of the offense, including evidence of voluntary intoxication. —— U.S. at ——, 116 S.Ct. at 2016. But the United States Supreme Court rejected that contention, noting that a state may enact procedural rules to exclude a jury from considering certain evidence offered by a defendant so long as that rule does not offend a fundamental principle of justice. —— U.S. at ——, 116 S.Ct. at 2017. The United States Supreme Court determined that a defendant's right to have a jury consider evidence of his voluntary intoxication does not constitute such a fundamental principle in American jurisprudence. —— U.S. at ——, 116 S.Ct. at 2021.

In light of *Egelhoff*, *Armstrong*, and *Bell*, Mr. Pointer has failed to make a real and substantial claim that MAI–CR3d 310.50 and § 562.076 violated any due process right to

have the jury consider his voluntary intoxication defense, or that MAI–CR3d 310.50 and § 562.076 relieved the state from proving his mental state beyond a reasonable doubt.

The judgment of the trial court is affirmed.

ULRICH, C.J., P.J., concurs.

FENNER, J., not participating because no longer a member of the court.